UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MICHAEL TYRONE HERRING,

　　　　Petitioner,

v.                                              Case No. 4:20cv249-TKW-HTC

M. V. JOSEPH WARDEN,

　　　　Respondent.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

Petitioner, Michael Tyrone Herring, a federal prisoner proceeding *pro se*, filed a petition under 28 U.S.C. § 2241, ECF Doc. 1, seeking an order compelling the Federal Bureau of Prisons ("BOP") to recalculate his credits and release date under the First Step Act (the "Act"). The matter was referred to the undersigned Magistrate Judge for preliminary screening pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon review, the undersigned respectfully recommends that the petition be dismissed because Petitioner has not exhausted his administrative remedies and

staying the case would not promote judicial efficiency, as Petitioner is not entitled to the relief he seeks.[1]

## I.   BACKGROUND

When Herring filed this petition, he was a federal prisoner serving a 36-month sentence for theft of government funds and aggravated identity theft.  *See United States v. Herring*, 4:18-cr-34 (N.D. Fla. January 27, 2019) at ECF Doc. 60.  He was incarcerated at the Federal Prison Camp in Pensacola, Florida, but was to be released to a halfway house on August 11, 2020.  ECF Doc. 1 at 11.  In the petition, Herring argues that if the BOP were to recalculate his earned time credits in accordance with the mandates of the Act, his release date would be pushed back to perhaps immediately.  ECF Doc. 1 at 10-11.  Thus, he requests "that the Court calculate the amount of First Step Act earned time credits [he] ha[s] earned and apply them first to an early transfer to pre-release custody (halfway house or home confinement) then to an early transfer to supervised release, and then the remainder reducing [his] supervised release."  *Id.* at 7.

## II.   EXHAUSTION

A § 2241 petition may properly proceed where the petitioner challenges the *execution* of his sentence.  *See Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348,

---

[1] Also, as discussed herein, Petitioner has failed to keep the Court apprised of his current address, which could be an indication that the BOP has granted the relief he seeks, making this matter moot.

1352 (11th Cir. 2008) (explaining that challenges to the execution of a sentence are cognizable under § 2241). However, a petitioner must exhaust available administrative remedies before he can obtain relief. *See Santiago–Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015); *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016). Although exhaustion is not a jurisdictional prerequisite to suit, it is still a requirement. *See Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam), *abrogated by Santiago–Lugo*, 785 F.3d at 471, 474–75, 474 n.5. Indeed, "the exhaustion requirement applies to the computation of sentence credit awards," such as at issue here. *Barron v. Adduci*, No. 7:15cv1258/AKK-TMP, 2016 WL 3958729 at *1 (N.D. Ala. June 14, 2016) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000) (a claim asking the court to grant credit for time-served can be brought under Section 2241 only after a petitioner has exhausted administrative remedies)).

To properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90–91(2006) (addressing the exhaustion requirement in the Prison Litigation Reform Act). Herring admits he has not exhausted his administrative remedies and, indeed, had, at the time he filed suit, an appeal pending before the General Counsel's office. That appeal is the final step in the BOP's administrative process, and a response by the General Counsel is due forty (40) days after the appeal is logged

into the Administrative Remedy Index.[2]  28 C.F.R. §§ 542.15, 542.18.  Herring alleges, however, that if he is required to wait until the General Counsel responds to his appeal, "he would lose the "most substantial benefit of the credits – i.e., a reduction in [his] time in custody or my level of custody." ECF Doc. 1 at 9.  Thus, he argues requiring him to exhaust his remedies would be futile.  Alternatively, he asks that the Court stay the case to allow resolution of his General Counsel appeal.

A similar argument was raised by the petitioner in *Washington v. Bureau of Prisons,* 2019 WL 6255786 (N.D. Ohio July 3, 2019).  Like the Petitioner here, Washington sought to have his good-conduct credit recalculated under the Act, and also argued he should be granted relief without exhausting his administrative remedies because requiring him to exhaust would be futile.  *Id.* at * 2.  The court, however, rejected the argument as "entirely conclusory" and also because he was not entitled to placement in a halfway house, regardless of any recalculation.  *Id.* at *3.  The court in *Rizzolo v. Puentes,* 2019 WL 1229772 (E. D. Cal. Mar. 14, 2019), also reached the same conclusion in dismissing a petition prior to service.  *Id.* at *3.

---

[2] Although the pending appeal is the last step in the BOP's administrative review procedures, because Petitioner sought administrative relief ***prior to*** the effective date of the provision of the Act, under which he seeks relief, (*see* Section III), his administrative remedies may not be exhausted even after he gets a response from the General Counsel.  *See Kurti v. White,* 2020 WL 2063871, at *3 (M.D. Pa. Apr. 29, 2020) (because the administrative review sought by petitioner was prior to implementation of the steps necessary to comply with the Act, it was insufficient to exhaust petitioner's administrative remedies).

Allowing Herring's petition to proceed on a futility exception would be contrary to the policy reasons behind exhaustion.[3]  Exhaustion allows "'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" *Green v. Sec'y for Dep't of Corr.*, 212 F. App'x 869, 871 (11th Cir. 2006) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).   Requiring exhaustion also "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford*, 548 U.S. at 93; *see also, Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'   And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account.").

Moreover, the courts in this circuit which have addressed this issue have required exhaustion.  *See, e.g.*, *DeJesus v. Woods*, No. 2:19cv121-WHA, 2019 WL

_____

[3] It is unclear post-*Santiago-Lugo* -- where the Eleventh Circuit held that exhaustion is not a jurisdictional requirement -- whether a futility exception to exhaustion exists.  *See, e.g., Jenner v. Stone*, No. CV 317-068, 2018 WL 2976995, at *2 (S.D. Ga. May 16, 2018), *report and recommendation adopted*, No. CV 317-068, 2018 WL 2972350 (S.D. Ga. June 13, 2018) (recognizing that prior to *Santiago-Lugo*, futility did not apply, but that futility was not addressed in *Santiago-Lugo* or any subsequent Eleventh Circuit opinion).

3326199 at *5 (M.D. Ala. June 21, 2019) (recommending dismissal of § 2241 petition seeking good conduct time and placement on home confinement under First Step Act as premature and explaining that, even if petitioner were ripe for review, court would not address merits of claims because petitioner did not exhaust administrative remedies); *Haynes v. Edge*, No. 2:19cv15, 2019 WL 3326221 at *2 (S.D. Ga. June 12, 2019) (recommending dismissal of § 2241 petition seeking good conduct credit under First Step Act as premature and explaining that, even if not premature, petition "would be subject to dismissal because he failed to exhaust his available administrative remedies prior to the filing of this Petition"); *Gibson v. Keaton Corr.*, No. 4:19CV391-WS/CAS, 2019 WL 5927732, at *2 (N.D. Fla. Oct. 8, 2019), *report and recommendation adopted*, No. 4:19CV391-WS/CAS, 2019 WL 5902141 (N.D. Fla. Nov. 12, 2019) ("In this case, nothing indicates Gibson exhausted his administrative remedies before filing this § 2241 petition. . . . Accordingly, this petition should be dismissed without prejudice. ").

Therefore, the undersigned finds that Petitioner must exhaust his administrative remedies, and his failure to do so warrants a dismissal of this action. Additionally, for the reasons set forth below, the undersigned finds that a stay of this case would not promote judicial efficiency as Petitioner is not entitled to the relief he seeks on the merits. Notably, the provisions of the First Step Act from which Petitioner seeks to benefit have not yet gone into effect.

## III.    A STAY WOULD NOT PROMOTE JUDICIAL EFFICIENCY

On December 21, 2018, the Act was signed into law.  Among other things, the Act provides that, "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system." *See* 18 U.S.C.A. § 3632.  The Attorney General met that deadline by publicly releasing a risk and needs assessment system on July 19, 2019.  *See* First Step Act of 2018 Risk and Needs Assessment System (called the Prisoner Assessment Tool Targeting Estimated Risk and Needs or the "PATTERN").[4]

Additionally, pursuant to the Act, the BOP has 180 days after the Attorney General completes and releases the system to implement and complete the initial needs assessment for each prisoner.  *See Bowling v. Hudgins*, 2020 WL 1918248, at *4 (N.D. W. Va. Mar. 16, 2020), *report and recommendation adopted*, 2020 WL 1917490 (N.D. Va. Apr. 20, 2020) (finding petition to be premature because the BOP had "180 days, or until January 15, 2020 to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs").

---

[4] Available at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

Also, the Act gives the BOP two years after it completes the risk and needs assessment for each prisoner to "phase in" the program implementation. *See* 18 U.S.C. § 3261(h); *see Allen v. Hendrix*, 2019 WL 8017868, at *2-3 (E.D. Ark. Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 890396 (E.D. Ark. Feb. 24, 2020) (emphasis added) (finding petition premature because the BOP has "until January 15, 2020, to implement the system, complete inmate risk assessments, and ***then begin*** to assign prisoners to appropriate evidence-based recidivism reduction programs"). That 2-year phase-in date has not expired, and will not until January 2022, the date that the BOP has cited to Herring in their responses to him. *See* ECF Doc. 1 at 9 (Petitioner states that the response he has received from the BOP at each step is that "the BOP does not have to implement the earned time credits until January 2022").

Because the Act itself does not require actual implementation for each inmate until January 2022, Petitioner is not entitled to an order from this Court compelling the BOP to recalculate Petitioner's credits. His petition is premature and his claim is not yet ripe. *See Bowling*, 2020 WL 1918248 at *4; *Allen*, 2019 WL 8017868 at *3. Indeed, because the courses for which Petitioner seeks credit occurred between November 2018 and December 2019, before the January 15, 2020 date, they would not count towards his First Step Act credit. *See Kurti v. White*, 2020 WL 2063871, at *5 (M.D. Pa. Apr. 29, 2020) (denying relief on exhaustion and the merits because

"the completion date of [petitioner's] programs range from 2004 through 2019, which is prior to the January 5, 2020 implementation of the FSA"); 18 U.S.C. § 3632(d)(4)(B). Therefore, providing Petitioner the relief he requests would result in an "unwarranted federal court interreference with the administration of prisons." *See Woodford*, 548 U.S. at 93.

## IV.    FAILURE TO KEEP COURT APPRISED OF HIS ADDRESS

As an additional matter, Petitioner has failed to keep the Court apprised of his current address. An order requiring the Petitioner to pay the full filing fee or apply to proceed *in forma pauperis* was returned undeliverable on June 8, 2020. ECF Doc. 5. A review of the envelope attached to the returned mail shows that the clerk attempted to mail the order to the address given by the Petitioner in his petition. ECF Doc. 1 at 1.[5] The post office, however, was "unable to forward" the letter, which the Court understands to mean, from experience in prisoner cases, that the Petitioner is no longer at the Camp and did not leave a forwarding address.

At the outset of this case, Petitioner was sent a Notice to Pro Se Litigant, specifically informing him that "[t]hroughout this case, you are required to advise

---

[5] Despite the returned letter, the undersigned notes that the BOP website indicates Petitioner is still at the Federal Prison Camp in Pensacola. Should that not be the case and Petitioner has been released, this petition may be moot. *See Powell v. McCormack,* 395 U.S. 486, 496 (1969) ("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"); *see also Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir.2001), citing, e.g., *North Carolina v. Rice,* 404 U.S. 244, 246 (1971) ("The question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction.").

the Clerk's Office **in writing** of any change in your mailing address by filing a Notice of Change of Address."  ECF Doc. 2.  An action may "be dismissed without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure due to Plaintiff's failure to keep the Court apprised of his current address." *Reed v. Stewart*, No. CV 15-00623-CG-B, 2017 WL 1287672, at *1 (S.D. Ala. Feb. 24, 2017), *report and recommendation adopted*, No. CV 15-623-CG-B, 2017 WL 1276060 (S.D. Ala. Apr. 3, 2017) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962) (interpreting Rule 41(b) not to restrict the court's inherent authority to dismiss *sua sponte* an action for lack of prosecution)).

## V.   CONCLUSION

Because Petitioner has not exhausted available administrative remedies his petition should be dismissed.  A court does not err by *sua sponte* dismissing a habeas case as long as it gives petitioner notice of its decision and an opportunity to be heard in opposition.  *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019) (holding that the district court did not err by *sua sponte* dismissing a plainly untimely § 2254 petition where the court provided the petitioner with "adequate notice and an opportunity to respond") (quotation marks omitted).

This Report and Recommendation provides Petitioner an opportunity to file objections and, thus, affords Herring both notice and a reasonable opportunity to respond.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020)

(petitioner was "provided ample notice and opportunity to explain why his petition was timely in his form petition and again when he was given the opportunity to respond to the magistrate judge's Report and Recommendation that his petition be summarily dismissed as untimely") (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) (holding that plaintiff "was afforded both notice and a reasonable opportunity to oppose" procedural default when he was given an opportunity to object to the magistrate judge's Report and Recommendation that "placed [him] on notice that procedural default was a potentially dispositive issue")).

Additionally, the undersigned will also direct the clerk to provide the Secretary and the Attorney General's office a copy of the petition and this Report and Recommendation so that the Secretary will also have an opportunity to respond to the Report and Recommendation.  *See Paez*, 947 F.3d at 649.

Accordingly, it is ORDERED:

1.    The clerk shall serve a copy of the petition (ECF Doc. 1) and this Order and Report and Recommendation to the Respondent, by providing a copy of same to the United States District Attorney for this District and the Warden.  Despite such service of the petition, under Rule 4 of the Rules Governing § 2254 Cases and because the recommendation is that the amended petition be dismissed, the Respondent may, but does not have to, file an answer, motion, or other response.

Accordingly, it is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2241 be dismissed for failure to exhaust administrative remedies and failure to keep the Court apprised of his current address.

2.      That the clerk be directed to close the file.

Done in Pensacola, Florida, this 22nd day of June, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.